IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

TAMMY M. SCOLARO,

    Plaintiff,

vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.

No. C09-0078

RULING ON JUDICIAL REVIEW

## TABLE OF CONTENTS

I.    *INTRODUCTION*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.   *PROCEDURAL BACKGROUND*. . . . . . . . . . . . . . . . . . . . . 2

III.  *PRINCIPLES OF REVIEW*. . . . . . . . . . . . . . . . . . . . . . . . 3

IV.  *FACTS*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    A.   *Scolaro's Education and Employment Background*. . . . . . . . . . . . 5
    B.   *Scolaro's Medical History*. . . . . . . . . . . . . . . . . . . . . . . . . . 5
        1.    *Aneurysm and Headaches*. . . . . . . . . . . . . . . . . . . . 5
        2.    *Mental Health Issues*. . . . . . . . . . . . . . . . . . . . . . . . 7
    C.   *Administrative Hearing Testimony*. . . . . . . . . . . . . . . . . . . . 10
        1.    *Scolaro's Testimony*. . . . . . . . . . . . . . . . . . . . . . . . 10
        2.    *Moore's Testimony*. . . . . . . . . . . . . . . . . . . . . . . . 11
        3.    *Vocational Expert's Testimony*. . . . . . . . . . . . . . . . . . 11

V.   *CONCLUSIONS OF LAW*. . . . . . . . . . . . . . . . . . . . . . . . . 13
    A.   *ALJ's Disability Determination*. . . . . . . . . . . . . . . . . . . . . . 13
    B.   *Objections Raised By Claimant*. . . . . . . . . . . . . . . . . . . . . . 15
        1.    *Dr. Snavely's Opinions*. . . . . . . . . . . . . . . . . . . . . . 15
        2.    *Opinions of Scolaro's Case Managers and Caseworkers*. . . . . 17

VI.  *CONCLUSION*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

VII. *ORDER*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 3) filed by Plaintiff Tammy M. Scolaro on June 10, 2009, requesting judicial review of the Social Security Commissioner's decision to deny her applications for Title II disability insurance benefits and Title XVI supplemental security income ("SSI") benefits. Scolaro asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide her disability insurance benefits and SSI benefits. In the alternative, Scolaro requests the Court to remand this matter for further proceedings.

## II. PROCEDURAL BACKGROUND

On January 13, 2006, Scolaro applied for both disability insurance benefits and SSI benefits. In her application for disability insurance benefits, Scolaro alleged an inability to work since January 10, 2003 due to a brain aneurysm and depression. In her application for SSI benefits, Scolaro alleged an inability to work since January 1, 2006, also due to a brain aneurysm and depression. Later, Scolaro amended her alleged disability onset date to December 19, 2005, for both disability insurance benefits and SSI benefits.[1] Scolaro's applications were denied on April 17, 2006. On October 3, 2006, Scolaro's applications were denied on reconsideration. On November 16, 2006, Scolaro requested an administrative hearing before an Administrative Law Judge ("ALJ"). On July 25, 2008, Scolaro appeared via video conference with her attorney before ALJ Denzel R. Busick for an administrative hearing. Scolaro, Scolaro's case manager, Miranda Moore, and vocational expert George B. Paprocki testified at the hearing. In a decision dated November 18, 2008, the ALJ denied Scolaro's claims. The ALJ determined that Scolaro was not disabled and not entitled to disability insurance benefits or SSI benefits because she was functionally capable of performing other work that exists in significant numbers in the national economy. Scolaro appealed the ALJ's decision. On April 16, 2009, the

---

[1] *See* Administrative Record at 54 ("The claimant, through her attorney at the hearing, amended her alleged onset date to December 19, 2005.").

Appeals Council denied Scolaro's request for review. Consequently, the ALJ's November 18, 2008 decision was adopted as the Commissioner's final decision.

On June 10, 2009, Scolaro filed this action for judicial review. The Commissioner filed an Answer on August 17, 2009. On September 28, 2009, Scolaro filed a brief arguing that there is not substantial evidence in the record to support the ALJ's finding that she is not disabled and that she could perform other work that exists in significant numbers in the national economy. On December 21, 2009, the Commissioner filed a responsive brief arguing that the ALJ's decision was correct and asking the Court to affirm the ALJ's decision. On March 16, 2010, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

## III. PRINCIPLES OF REVIEW

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). Pursuant to 42 U.S.C. § 1383(c)(3), the Commissioner's final determination after an administrative hearing not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3). 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court will "affirm the ALJ's decision 'if the ALJ's findings are supported by substantial evidence on the record as a whole[.]'" *Owen v. Astrue*, 551 F.3d 792, 798 (8th Cir. 2008) (quoting *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007)). Evidence is "substantial evidence" if a reasonable person would find it adequate to support the ALJ's determination. *Wiese v. Astrue*, 552 F.3d 728, 730 (8th Cir. 2009) (citing *Eichelberger v. Barnhart*, 390 F.3d 584, 589 (8th Cir. 2004)); *see also Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'Substantial evidence is less than a preponderance, but enough that

a reasonable mind might accept as adequate to support a conclusion.' *Lewis v. Barnhart*, 353 F.3d 642, 645 (8th Cir. 2003).").

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citing *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Wagner*, 499 F.3d at 848 (citing *Bowman v. Barnhart*, 310 F.3d 1080, 1083 (8th Cir. 2002)). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Casey v. Astrue*, 503 F.3d 687 (8th Cir. 2007), the Eighth Circuit further explained that a court "will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 691 (citations omitted). "A decision is not outside that 'zone of choice' simply because [a court] may have reached a different conclusion had [the court] been the fact finder in the first instance." *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006). Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams*, 393 F.3d at 801 (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Moore*, 572 F.3d at 522 ("'If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005)."); *Holley v. Massanari*, 253 F.3d 1088, 1091 (8th Cir. 2001) ("As long as

substantial evidence in the record supports the Commissioner's decision, we may not reverse it either because substantial evidence exists in the record that would have supported a contrary outcome, or because we would have decided the case differently.").

## IV. FACTS

### A. Scolaro's Education and Employment Background

Scolaro was born in 1959. She completed high school. Apparently, she dropped out of high school at some point, but returned to get her diploma.[2] Following high school, she also took a few classes at Hamilton Business College.

The record contains a detailed earnings report for Scolaro. The report covers Scolaro's employment history from 1980 to 2007. She had no earnings from 1980 to 1984. Scolaro had a range of earnings from 1985 to 2003, from a low of $171.85 (1987) to a high of $11,582.88 (2002). She had no earnings in 2004, and earned $115.00 in 2005. Scolaro had no earnings in 2006 and 2007.

### B. Scolaro's Medical History

#### 1. Aneurysm and Headaches

In April 2005, Scolaro was struck by a car while riding her bike. A CT scan following the accident revealed a basilar aneurysm.[3] Dr. Raj Kothimbakam, M.D., evaluated Scolaro and noted that she had headaches for many years, but following the accident, the severity of her headaches increased. Dr. Kothimbakam recommended an endovascular embolization as treatment for the aneurysm.

On April 26, 2005, Scolaro underwent an aneurysm coiling at the tip of her basilar artery. She was hospitalized until April 28. During her hospital course, she remained neurologically and hemodynamically stable. She was discharged without complications.

---

[2] *See* Administrative Record at 19.

[3] A basilar aneurysm affects the basilar artery which supplies blood to the brain. The basilar artery is located at the junction between the medulla oblongata and the pons. *See* http://en.wikipedia.org/wiki/Basilar_artery

On June 14, 2005, Scolaro had a follow-up appointment with Dr. Robert A. Taylor, M.D. Dr. Taylor found that Scolaro's "headaches are improved since the aneurysm treatment."[4] Dr. Taylor prescribed Plavix and suggested Scolaro take aspirin as continued treatment.

On November 11, 2005, Scolaro met with Dr. Wendy Shen, M.D., complaining of severe headaches. Dr. Shen noted that Scolaro was also evaluated by the neurosurgery department, and a recoiling procedure for her aneurysm was scheduled for December. Dr. Shen prescribed Vicodin as treatment for the headaches in the interim before the recoiling procedure.

On December 6, 2005, Scolaro underwent a recoiling procedure for her basilar tip aneurysm. On December 15, 2005, Scolaro had a follow-up appointment with Dr. Taylor. Scolaro complained of continued severe headaches. Dr. Taylor opined that Scolaro's headaches might be the result of an inflammatory reaction to the coils used for healing her aneurysm. Dr. Taylor suggested a referral to the Headache Clinic at the University of Iowa Hospitals and Clinics, and prescribed 800 mg of Ibuprofen to be taken every six hours as treatment.

On January 31, 2007, Scolaro underwent a second recoiling procedure for her basilar tip aneurysm. Scolaro tolerated the procedure well. Her headaches improved and she was discharged on February 3, 2007.

On August 26, 2008, Scolaro met with Dr. Steven Wolfe, M.D., complaining of chronic daily headaches. Scolaro described the headaches as lasting for 30 minutes or longer, and causing sharp pain in the scalp area. Dr. Wolfe noted that she also sometimes complained of occipital discomfort. Dr. Wolfe restricted her to Tylenol as pain medication and recommended a referral to the Headache Clinic as treatment. Scolaro had a third

---

[4] *See* Administrative Record at 342.

recoiling procedure for her basilar tip aneurysm on September 9, 2008. Scolaro tolerated the procedure well.[5]

### 2. *Mental Health Issues*

In December 2005, Scolaro was admitted to St. Luke's Hospital in Cedar Rapids, Iowa, due to suspected alcohol and drug overdose. Scolaro began drinking at 9:00 a.m. and started taking pills around 1:00 p.m. When she was admitted to the hospital, she had a blood alcohol level of .379. Upon discharge from St. Luke's, Scolaro was involuntarily committed to the Abbe Center for Community Care in Cedar Rapids, Iowa. She was diagnosed with major depressive disorder and polysubstance abuse.

On March 8, 2006, Scolaro was referred to the Abbe Center for Community Health by staff at the Abbe Center for Community Care, for therapy. Carla Levi, LMSW ("Levi") and Gary Siguenza, LISW ("Siguenza") evaluated Scolaro. Levi and Siguenza noted that:

> [Scolaro] states that since she has been on her medications that her depression symptoms have greatly decreased, but that she still has a lot of anxiety. She states that she does not feel sad or depressed at this time nor does she feel discouraged. Her appetite is good but she still has a lot of problems sleeping and is up and down in the nighttime, due mostly to headaches. She said her energy level is fair and that she is someone who is easily irritated and agitated. She has a low level of concentration and if she thinks about things for any length of time, has some sense of guilt. She says she has feelings of worthlessness, hopelessness and helplessness mostly when she has bad headaches. She says she has crying spells off and on but denies any suicidal ideation. She says she feels tired and fatigued as well as tense and nervous most of the time. . . . She has panic attacks once every 2 months. . . . She says that she has to this day short attention span and is easily distractable and very forgetful. She says she has a very poor memory to complete her tasks as well as procrastinates. . . .

---

[5] *Id.* at 653-58.

7

(Administrative Record at 477-78.) Levi and Siguenza diagnosed Scolaro with major depressive disorder, alcohol dependence, and polysubstance dependence. Levi and Siguenza recommended monthly therapy as treatment.

On March 22, 2006, Dr. Beverly Westra, Ph.D., reviewed Scolaro's medical records and provided Disability Determination Services ("DDS") with a Psychiatric Review Technique and mental residual functional capacity ("RFC") assessment for Scolaro. On the Psychiatric Review Technique assessment, Dr. Westra diagnosed Scolaro with major depressive disorder and substance addition disorders. Dr. Westra determined that Scolaro had the following limitations: moderate restriction of activities of daily living, moderate difficulties in maintaining social functioning, and marked difficulties in maintaining concentration, persistence, or pace. Dr. Westra also found that Scolaro had three episodes of decompensation, each for an extended period of time. On the mental RFC assessment, Dr. Westra found that Scolaro was not significantly limited in any area of mental functioning. Dr. Westra concluded that:

> [Scolaro's] substance use is the reason for her multiple episodes of decompensation and need for hospitalizations. Her reports about her use are unreliable. She is currently court committed to residential treatment after many unsuccessful treatment attempts. She has marked restrictions for persistence and three or more episodes of decompensation since AOD [(alleged onset date)]. She meets the listing for 12.09. If she were to maintain abstinence, depressive symptoms could be adequately treated and minimal limitations would remain.

(Administrative Record at 413.)

On October 2, 2006, Dr. Herbert Notch, Ph.D., reviewed Scolaro's medical records and provided DDS with a Psychiatric Review Technique and mental RFC assessment for Scolaro. On the Psychiatric Review Technique assessment, Dr. Notch diagnosed Scolaro with major depressive disorder, personality disorder, and alcohol dependence. Dr. Notch determined that Scolaro had the following limitations: mild restriction of activities of daily living, moderate difficulties in maintaining social

8

functioning, and moderate difficulties in maintaining concentration, persistence, or pace. Dr. Notch concluded that:

> From a functional standpoint, [Scolaro] can understand instruction, may have some concentration problems, but can interact with supervisors and coworkers. She may need some help with funds, but can do simple routine work. Allegations are credible and consistent with ability to do simple routine work.

(Administrative Record at 523.) On the mental RFC assessment, Dr. Notch determined that Pritchett was moderately limited in his ability to: understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, work in coordination with or proximity to others without being distracted by them, complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without distracting them or exhibiting behavioral extremes, respond appropriately to changes in the work setting, and set realistic goals or make plans independently of others.

On May 16, 2007, and June 1, 2007, Scolaro underwent a neuropsychological evaluation performed by Dr. Ellie Snavely, Ph.D. Scolaro was given a number of tests which were interpreted by Dr. Snavely. The overall assessment results suggested "marked fluctuations and inconsistent performances of a type suggesting significantly reduced attention and concentration."[6] Dr. Snavely also noted that "[o]verall assessment results raise the question of a global decrease of cognitive functioning in comparison to childhood status."[7] Dr. Snavely further questioned whether Scolaro had a "lifelong developmental learning disorder" in the areas of reading and verbal learning. Lastly, Dr. Snavely opined

---

[6] *See* Administrative Record at 596.

[7] *Id.*

9

that "[q]antitative assessment of current mood status suggests moderately severe depression and anxiety."[8]

### C. Administrative Hearing Testimony

#### 1. Scolaro's Testimony

At the administrative hearing, Scolaro's attorney questioned Scolaro regarding her difficulties with recurring headaches:

> Q: Okay. And so tell me how severe the headaches are. What are they like?
> A: Almost incapacitating.
> Q: What do you, what happens?
> A: I, I can't stand the light, noises. I can't move. I just lay there.
> Q: The best solution is just to lay steady, lay down?
> A: Yeah.
> Q: Turn off the lights?
> A: Uh-huh, exactly.
> Q: How long do they last?
> A: They, they vary. I don't know.

(Administrative Record at 20.) When asked about treatment for alcohol abuse, Scolaro explained that she had treatment in 2004, and has not had any relapses or criminal incidents since that time. Next, Scolaro and her attorney discussed her mental health history. Scolaro stated that she is treated by a psychiatrist at the Abbe Center for Mental Health in Cedar Rapids, Iowa. She also testified that she did not see a therapist at the Abbe Center because a therapist that she worked with in the past, told her that she "couldn't concentrate long enough to make any good [use of therapy]."[9] Scolaro further explained that her difficulties with concentration also make it difficult for her to remember things. Lastly, Scolaro stated that she suffers from social anxiety and depression. Specifically, she testified that she is "constantly" depressed, and rarely socializes with anyone but her adult children.

---

[8] *Id.* at 597.

[9] *See* Administrative Record at 22.

The ALJ also questioned Scolaro. When asked her to describe a typical day, Scolaro stated that she gets up, eats something for breakfast, cleans up around her apartment, takes a shower, and then watches television and movies. Next, the ALJ asked Scolaro to discuss her difficulties with depression:

> Q: . . . when your attorney was asking you questions, your main problem, as you see it, is you feel you're depressed most of the time? Is that correct?
> A: Yeah. Yes sir.
> Q: You don't feel motivated to do very much other than watch that television, is that correct?
> A: That's correct. . . .
> Q: And these headaches, as far as you're concerned, would keep you from working, is that correct?
> A: Not only the headaches, but the memory. I can't keep a thought long enough.

(Administrative Record at 31-32.)

### 2. *Moore's Testimony*

At the administrative hearing, Miranda Moore ("Moore"), Scolaro's case manager, testified regarding Scolaro. Moore explained that she coordinates services for Scolaro, such as help accessing community resources and money management. Moore opined that Scolaro "would not be functional without our services. She definitely needs the help of counselors that visit her in the home."[10] Moore described Scolaro's limitations as low motivation and anxiety. Specifically, Moore testified that Scolaro's "depression keeps her on a low motivation level where sometimes she just can't get out of bed or she just might not be able to leave the house. She's so anxious about what may happen if she has to go do a certain task or even go to work."[11]

### 3. *Vocational Expert's Testimony*

At the hearing, the ALJ provided vocational expert George B. Paprocki with a hypothetical for an individual who is able to perform:

---

[10] *See* Administrative Record at 36.

[11] *Id.*

> a medium level of work, [the individual] could pick up 50 pounds on occasion, otherwise 25 pounds or less frequently. Sit six hours out of an eight-hour workday. Stand and walk combined about six hours, with normal work breaks. No postural limitations. No manipulation limitations. No visual limits with glasses. No communication limits and no environmental limits. However, assume initially the person would have mild limits on their activities of daily living and moderate limits on their social functioning, moderate limits on their concentration, persistence and pace most of the time. . . . [The individual w]ould [also] have moderate limits on the ability to understand and remember details; moderate limits on the ability to carry out details; moderate limits on the ability to maintain extended concentration; moderate limits on the ability to work in coordination with other people; moderate limits in the ability to accept instruction or criticism from supervisors; get along with co-workers; adapt to changes in their work setting or the work routine; or to make plans independently of other people.

(Administrative Record at 39-40.) The vocational expert testified that under such limitations, Scolaro could not perform her past relevant work, and would be limited to unskilled work activity. The vocational expert concluded that Scolaro could perform the following work: (1) laundry worker I or II (collectively 2,800 positions in Iowa and 110,000 positions in the nation), and (2) housekeeping cleaner (7,500 positions in Iowa and 430,000 positions in the nation). The ALJ changed his original hypothetical to include marked limitations of concentration, persistence and pace, and the individual being prone to have an episode of decompensation lasting two to three days, or up to ten days, every six months. The vocational expert testified that under such limitations, there would be no jobs that Scolaro could perform on a competitive basis. Next the ALJ changed his original hypothetical to include an individual who experiences a severe headache at least once every week to the extent that he or she would lose one-half to one full day of work per week. Similarly, the vocational expert testified that under such limitations, there would be no jobs that Scolaro could perform on a competitive basis.

## V. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Scolaro is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007); *Anderson v. Barnhart*, 344 F.3d 809, 812 (8th Cir. 2003). The five steps an ALJ must consider are:

> (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citing *Eichelberger*, 390 F.3d at 590); *see also* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In order to establish a disability claim, "the claimant bears the initial burden to show that [he or] she is unable to perform [his or] her past relevant work." *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998) (citing *Reed v. Sullivan*, 988 F.2d 812, 815 (8th Cir. 1993)). If the claimant meets this burden, the burden of proof then shifts to the Commissioner to demonstrate that the claimant retains the residual functional capacity ("RFC") to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Id.* The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. §§ 404.1545, 416.945. "It is 'the ALJ's responsibility to determine [a] claimant's RFC based on all the relevant

evidence, including medical records, observations of treating physicians and others, and [the] claimant's own description of her limitations.'" *Page*, 484 F.3d at 1043 (quoting *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)); 20 C.F.R. §§ 404.1545, 416.945.

The ALJ applied the first step of the analysis and determined that Scolaro had not engaged in substantial gainful activity since December 19, 2005. At the second step, the ALJ concluded from the medical evidence that Scolaro had the following severe combination of impairments: depression and basilar artery aneurysm, status-post embolization and multiple recoilings. At the third step, the ALJ found that Scolaro did not have an impairment or combination of impairments listed in "20 C.F.R. [§] 404, [Appendix 1, Subpart P, Regulations No. 4 (the Listing of Impairments)]." At the fourth step, the ALJ determined Scolaro's RFC as follows:

> [Scolaro] has the residual functional capacity to perform medium work . . . such that she can lift and carry fifty pounds occasionally and twenty-five pounds frequently. She can sit six hours out of an eight-hour workday and can stand and walk combined for six hours out of an eight-hour workday, with normal breaks. She has no postural, manipulation, communication, or environmental limitations. She has no visual limitations, with the use of glasses. She has mild limitations in activities of daily living, moderate limitations in social functioning, and moderate limitations in concentration, persistence, and pace most of the time. She has moderate limitations on her ability to understand and remember details; moderate limitations in her ability to carry out details; moderate limitations on her ability to maintain extended concentration; and moderate limitations on her ability to work in coordination with other people. She also will have moderate limitations on her ability to accept instruction or criticism and on her ability to get along with co-workers. She will have moderate limitations on her ability to adapt to change in the work setting or routine and in her ability to make plans independent of other people.

(Administrative Record at 58.) Also at the fourth step, the ALJ determined that Scolaro could not perform any of her past relevant work. At the fifth step, the ALJ determined that based on her age, education, previous work experience, and RFC, Scolaro could work

at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded that Scolaro was not disabled.

### B. Objections Raised By Claimant

Scolaro argues that the ALJ erred in two respects. First, Scolaro argues that the ALJ failed to give good reasons for discounting the opinions of Dr. Snavely regarding her limitations in concentration, persistence, and pace. Second, Scolaro argues that the ALJ erred by ignoring the opinions and observations of her case managers and caseworkers.

#### 1. *Dr. Snavely's Opinions*

Scolaro argues that the ALJ failed to properly consider the opinions of Dr. Snavely. Specifically, Scolaro argues that the ALJ failed to address or discuss his reasons for rejecting Dr. Snavely's finding that she had marked limitations in attention and concentration. Scolaro asserts that this matter should be reversed and remanded for further consideration of Dr. Snavely's opinions.

An ALJ is required to "assess the record as a whole to determine whether treating physicians' opinions are inconsistent with substantial evidence on the record." *Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2)). The opinion of a treating physician:

> should not ordinarily be disregarded and is entitled to substantial weight. A treating physician's opinion regarding an applicant's impairment will be granted controlling weight, provided the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record.

*Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000) (citations omitted).

"Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole." *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). "The ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions." *Id.*; *see also Travis*, 477 F.3d at 1041 ("A physician's

statement that is 'not supported by diagnoses based on objective evidence' will not support a finding of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). If the doctor's opinion is 'inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight.' *Id.*"); *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004) (an ALJ does not need to give controlling weight to a physician's RFC assessment if it is inconsistent with other substantial evidence in the record); *Cabrnoch v. Bowen*, 881 F.2d 561, 564 (8th Cir. 1989) (the resolution of conflicts of opinion among various treating and examining physicians is the proper function of an ALJ).

Additionally, the regulations require an ALJ to give "good reasons" for giving weight to statements provided by a treating physician. *See* 20 C.F.R. § 404.1527(d)(2). The regulations also require an ALJ to give "good reasons" for rejecting statements provided by a treating physician. *Id.*; *see also Tilley v. Astrue*, 580 F.3d 675, 680 (8th Cir. 2009) ("The regulations require the ALJ to 'always give good reasons' for the weight afforded to the treating source's opinion.") (citation omitted).

In his decision, the ALJ considered Dr. Snavely's opinions and accorded them "some weight." The ALJ's decision provides that:

> Dr. Snavely diagnosed [Scolaro] with a cognitive disorder not otherwise specified (NOS), a possible learning disorder, and moderately severe depression. While Dr. Snavely noted [Scolaro] may have significant limitations in certain cognitive areas, [s]he did not indicate [Scolaro] was unable to maintain employment. The opinions of Dr. Snavely have been evaluated as those of a treating specialist. The record indicates that Dr. Snavely made his [*sic*] conclusions based upon two days of testing, making his [*sic*] treatment interaction relatively brief. The undersigned has accorded the statements of Dr. Snavely some weight, to the extent they are consistent with the residual functional capacity detailed above.

(Administrative Record at 61.) Having reviewed the entire record, the Court finds that the ALJ properly considered and weighed the opinion evidence provided by Dr. Snavely. First, Scolaro overstates Dr. Snavely's opinion regarding her limitations in attention and

concentration. Dr. Snavely did not opine that Scolaro had a marked limitation in concentration, persistence, and pace. Instead, Dr. Snavely opined that the overall assessment results suggested "marked fluctuations and inconsistent performances of a type suggesting significantly reduced attention and concentration."[12] The ALJ found Dr. Snavely's opinions to be consistent with other evidence showing moderate limitations in concentration, persistence, and pace.[13] Furthermore, the ALJ correctly noted that Dr. Snavely "did not indicate that [Scolaro] was unable to maintain employment."[14] *See Young v. Apfel*, 221 F.3d 1065, 1069 (8th Cir. 2000) ("We find it significant that no physician who examined [the claimant] submitted a medical conclusion that she is disabled and unable to perform any type of work."). Accordingly, even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### 2. *Opinions of Scolaro's Case Managers and Caseworkers*

Scolaro argues that the ALJ failed to properly consider the opinions of Miranda Moore and Amy Weiler because as a case manager and a caseworker, they are considered "other medical sources." Social Security Ruling 06-03p was issued on August 9, 2006 by the Social Security Administration ("SSA"). The purpose of the ruling was to clarify how the SSA considers opinions from sources not classified as "acceptable medical sources." *See Sloan v. Astrue*, 499 F.3d 883, 888 (8th Cir. 2007) (discussing SSR 06-03p). SSR 06-03p provides that when considering the opinion of a source that is classified as a "not acceptable medical source," such as a social worker, case manager, or caseworker, "it

---

[12] *See* Administrative Record at 596.

[13] *See* Administrative Record at 511-28 (opinions of consultative doctor, Herbert Notch, Ph.D.). *See Casey v. Astrue*, 503 F.3d 687, 694 (8th Cir. 2007) (an ALJ does not err by considering the opinion of a consultative doctor along with the medical evidence as a whole).

[14] *See* Administrative Record at 61.

would be appropriate to consider such factors as the nature and extent of the relationship between the source and the individual, the source's qualifications, the source's area of specialty or expertise, the degree to which the source presents relevant evidence to support his or her opinion, whether the opinion is consistent with other evidence, and any other factors that tend to support or refute the opinion." SSR 06-03p. Furthermore, in discussing SSR 06-03p, the Eighth Circuit Court of Appeals, in *Sloan*, pointed out:

> Information from these 'other sources' cannot establish the existence of a medically determinable impairment, according to SSR 06-3p. Instead, there must be evidence from an 'acceptable medical source' for this purpose. However, information from such 'other sources' may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function.

*Sloan*, 499 F.3d at 888 (quoting SSR 06-03p). In determining the weight afforded to "other medical evidence," an "ALJ has more discretion and is permitted to consider any inconsistencies found within the record." *Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005) (citation omitted).

The Court also bears in mind that an ALJ has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007); *Sneed v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)); *see also Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted).

In his decision, the ALJ thoroughly considered and discussed the opinions of Moore and Weiler.[15] The ALJ also thoroughly explained his reasons for granting little weight to the opinions of Moore and Weiler. Specifically, the ALJ found: (1) the accuracy of Moore's testimony questionable because she is not medically trained to make exacting observations as to dates, frequencies, types, and degrees of medical signs and symptoms of disability; (2) Moore had been Scolaro's case manager for only a short period of time; (3) Moore only met with Scolaro on a monthly or bi-monthly basis for about one hour at a time; (4) Moore's opinions were inconsistent with the medical evidence in the record as a whole; (5) Weiler's opinion that Scolaro was disabled and entitled to social security benefits was of little value because such a determination is left to the Commissioner; (6) Weiler's opinions were not based on medical evidence; and (7) Weiler's opinions were inconsistent with the medical record as a whole. After considering the ALJ's findings, the Court concludes that the ALJ properly based his reasons for affording Moore and Weiler's opinions little weight, on "the nature and extent of the relationship between the source and the individual, the source's qualifications, the source's area of specialty or expertise, the degree to which the source presents relevant evidence to support his or her opinion, whether the opinion is consistent with other evidence, and any other factors that tend to support or refute the opinion" as required by SSR 06-03p.

Therefore, having reviewed the entire record, the Court finds that the ALJ properly considered the opinions of Moore in Weiler in accordance with SSR 06-03p, and fully and fairly developed the record with regard to their opinions. Accordingly, even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801; *see also Raney*, 396 F.3d at 1010 ("In determining what weight to give 'other medical evidence,' the "ALJ has *more discretion* and is permitted to consider any inconsistencies found within the record.") (Emphasis added).

---

[15] *See* Administrative Record at 59-60 (ALJ's discussion of the opinions of Moore and Weiler).

## VI. CONCLUSION

The Court finds that the ALJ: (1) properly considered and weighed the opinions of Dr. Snavely; and (2) properly considered the opinions of Moore and Weiler. Accordingly, the Court determines that the ALJ's decision is supported by substantial evidence and shall be affirmed.

## VII. ORDER

For the foregoing reasons, it is hereby **ORDERED**:

1. The final decision of the Commissioner of Social Security is **AFFIRMED**;
2. Plaintiff's Complaint (docket number 3) is **DISMISSED** with prejudice; and
3. The Clerk of Court is directed to enter judgment accordingly.

DATED this 19th day of April, 2010.

JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA